OPINION
{¶ 1} This is an appeal by appellant, Ohio Casualty Insurance Company ("Ohio Casualty"), from a judgment of the Franklin County Court of Common Pleas, Probate Division, overruling objections to a magistrate's decision and setting aside the court's entry of April 28, 1999, settling the guardian's first partial account, and the court's November 9, 1999 entry, settling the guardian's second and final distributive account.
 {¶ 2} On October 11, 1997, Katherine A. Guzay suffered traumatic brain injury as a result of an automobile accident. On November 14, 1997, Davis A. Erwin (hereafter "Erwin"), the daughter of Guzay, filed an application with the probate court for appointment of a guardian for Guzay. A magistrate of the court conducted a hearing on the application, at which time Erwin indicated that her mother had a brokerage account in the amount of approximately $200,000. Following the hearing, the magistrate issued a decision, recommending that Erwin be appointed guardian of the person and estate of Guzay, and setting a bond in the amount of $400,000. By judgment entry filed December 12, 1997, the trial court adopted the magistrate's decision finding Guzay to be incompetent and appointing Erwin as guardian.
 {¶ 3} Ohio Casualty subsequently filed a guardian's bond in the amount of $400,000. On March 17, 1999, Erwin filed a first account with the court. On May 27, 1999, W. Sean Kelleher filed an application to be appointed successor guardian of the ward and her estate, and the court set a hearing on the application. On August 3, 1999, Erwin resigned as guardian of the estate, and a magistrate of the court subsequently appointed Kelleher as successor guardian of the estate. On September 28, 1999, Erwin filed a second and final account with the court. On August 30, 2000, the successor guardian of the estate filed a first account.
 {¶ 4} On October 20, 2000, Andrew J. Art filed an application for appointment as successor guardian over the person and estate of Guzay. On October 27, 2000, a magistrate conducted a hearing on the application. At that hearing, successor guardian Kelleher expressed concern regarding one of the ward's accounts that she held with Eisner Securities, Inc. ("Eisner Securities"). Kelleher stated that a representative from Eisner Securities had informed him that Erwin's husband, Joseph Erwin, an employee at that firm, had been terminated from his employment, and that he was under investigation by the firm and by the Federal Bureau of Investigation. During the hearing, the magistrate accepted the resignations of both Erwin, as guardian of the person, and Kelleher, as guardian of the estate. The magistrate rendered a decision appointing Art as successor guardian of the person and estate of Guzay, with bond set at $272,000. The trial court adopted the magistrate's decision by entry filed October 27, 2000.
 {¶ 5} On January 8, 2001, Art filed a motion for leave to file exceptions to the accounts. In the motion, Art asserted that Kelleher had informed him that certain monies might be missing from Guzay's account held with Eisner Securities due to an alleged malfeasance by an employee or principal of Eisner Securities. Art asserted that, while Kelleher reported assets of at least $83,762.98 in one of the Eisner Securities accounts, representatives of Eisner Securities recently informed him that there was a zero balance in the account.
 {¶ 6} On February 14, 2001, Art filed exceptions to all accounts previously filed by both former guardians. The exceptions dealt primarily with missing assets in the Eisner Securities account, including a claim that a National City Bank account had received approximately $92,969 in wire transfers from the ward's account with Eisner Securities during the period from December 19, 1997 through February 26, 1998.
 {¶ 7} On April 23, 2001, Art filed a Civ.R. 60 motion for relief from the judgments approving accounts, and for an order surcharging the former fiduciary, Erwin, and the fiduciary's bondsman. In the accompanying memorandum, Art asserted that, as a result of illegal conversions, apparently made by Erwin and/or her spouse, the guardianship was missing $185,838.33 in assets. Also on April 23, 2001, Art filed amended exceptions, asserting in part that a review of the ward's National City Bank account disclosed that ten checks were written to a Bank One account, held in the name of Joseph E. Erwin, totaling $90,338.33. Art also asserted that the National City Bank statements were delivered to former guardian Davis Erwin's home address; Art claimed that the former guardian knew or should have known that there were irregularities in the assets of the guardianship.
 {¶ 8} On June 1, 2001, Ohio Casualty filed a memorandum opposing the guardian's motion for relief from judgment. Attached to the memorandum was the affidavit of former guardian, Erwin.
 {¶ 9} A magistrate of the court conducted a hearing on Art's motion for exceptions. On February 19, 2002, the magistrate rendered a decision, including the following findings of fact:
1. Davis Erwin was appointed the guardian of the person and estate of Katherine A. Guzay on December 12, 1997. Davis Erwin posted a bond with Ohio Casualty Insurance Company in the sum of $400,000.00.
2. During her tenure as guardian, Davis Erwin was married to Joseph E. Erwin, a securities broker with Eisner Securities.
3. The evidence from the testimony of Andrew Art, the current guardian, and from the Exhibits indicate that $185,838.33 was diverted from the guardianship to Joseph Erwin during the time in which Davis Erwin was the guardian. No evidence was offered to indicate any of these funds were used for the benefit of the ward.
4. Although certain financial statements of Eisner Securities were forged by Joseph Erwin, many of these documents and documents from other financial institutions came directly to the residence of Davis Erwin who failed to exercise any diligence whatsoever to supervise, monitor, and invest the assets. Ms. Erwin delegated all of her responsibilities to her husband, Joseph Erwin.
5. In addition to the loss of principal, Joseph Erwin charged commissions of $8,570.91 in dealing with assets obtained through improper acts.
6. The failure of the guardian, Davis Erwin, to exercise any diligence whatsoever as guardian of the estate caused additional damage to the estate for loss of interest on the principal of the converted assets and for additional penalties in the interest caused by the ward being unable to timely pay her mortgage.
7. The Ohio Casualty Insurance Co. has been involved in the exceptions and other litigation including a concealment of assets since the inception of the litigation. The concealment of assets was filed due to the request of counsel for the Ohio Casualty Insurance Co. Therefore, the guardianship estate has lost additional sums in attorney fees and costs in attempting to recoup these assets through this action and through the concealment of assets that remains pending.
 {¶ 10} The magistrate concluded that the loss of assets "was proximately caused by the failure of Davis Erwin to take any steps whatsoever to collect, invest, manage, or use the assets of her ward for the ward's best interest." Accordingly, the magistrate charged Erwin in exceptions to her account in the sum of $185,838.33, plus costs.
 {¶ 11} Erwin sent a letter to the court from St. Croix, Virgin Islands, dated February 26, 2002, and filed with the court on March 4, 2002, setting forth "objections" to findings of fact numbers four and six of the magistrate's decision. On May 7, 2002, the successor guardian filed a memorandum contra Erwin's objections and a memorandum in support of the motion for relief from judgments pursuant to Civ.R. 60(B).
 {¶ 12} The trial court filed a judgment entry on June 18, 2002, sustaining and modifying the magistrate's decision. Specifically, the court made a determination that it was "defrauded by the presentation of falsified bank or brokerage statements, and this constitutes fraud sufficient to vacate the orders under O.R.C. 2109.35." The court found Erwin's objections to be out of rule under Civ.R. 53(3)(b) and Loc.R. 75.11. The court also rejected a contention by counsel for Ohio Casualty that the magistrate's decision was procedurally defective in that it did not specifically vacate the two previous orders of the trial court which settled Erwin's first guardian's account, nor her second and final account. Accordingly, the trial court overruled Erwin's objections and adopted the magistrate's decision in whole, modifying it "only to the extent necessary regarding the November 9, 1999 Order selling Davis Erwin's Final Account and discharging her bondsman."
 {¶ 13} Based upon the trial court's finding that it was defrauded by the presentation of falsified bank or brokerage statements, the court ordered that the April 28, 1999 entry, settling the guardian's first partial account, as well as the November 9, 1999 entry, settling the guardian's second and final distributive account and discharging bondsman, be set aside and vacated. The court also adopted the surcharge in the magistrate's decision as follows: $185,838.33 for misappropriated assets, $66,892.10 for interest since the date of the misappropriations through April 30, 2002, and $2,208.93 in costs advanced by the successor guardian. The court modified the surcharge in the magistrate's decision by allowing additional damages sought in the successor guardian's exceptions as follows: $8,570.91 for unauthorized brokerage commissions; $210 for unauthorized wire transfer fees; $3,611.54 for interest on unauthorized commissions and wires through April 30, 2002; and $4,083.70 for penalties and interest on a First National Bank loan which remains unpaid due to the insolvency of the guardianship. The court ordered the successor guardian to proceed against his or her bondsman to satisfy this obligation.
 {¶ 14} On appeal, Ohio Casualty sets forth the following three assignments of error for review:
1. The Probate Court abused its discretion in vacating the April 28, 1999 Entry Settling Guardian's First Partial Account and the November 9, 1999 Entry Settling Guardian's Second and Final Distributive Account and discharging Bondsman because the Probate Court's June 18, 2002 factual finding that "this Court was defrauded by the presentation of falsified bank or brokerage statements" is not supported by any probative evidence in the Record.
2. Under the plain text of Section 2109.35(A), the Probate Court's June 18, 2002 finding of fact is insufficient as a matter of law to justify the Probate Court's Order setting aside and vacating the Probate Court's April 28, 1999 Entry Settling Guardian's First Partial Account and the November 9, 1999 Entry Settling Guardian's Second and Final Distributive Account and discharging Bondsman.
3. Davis Erwin and her surety, Appellant Ohio Casualty Insurance Company, were denied due process of law as guaranteed by the Ohio Constitution. Under the plain text of Section 2109.35(A), the Probate Court lacked jurisdiction to adjudicate the Successor Guardian's February 14, 2001 Exceptions to Account(s) and April 23, 2001 Amended Exceptions to Account(s) until the Probate Court issued an order setting aside and vacating the Probate Court's April 28, 1999 Entry Settling Guardian's First Partial Account and the November 9, 1999 Entry Settling Guardian's Second and Final Distributive Account and discharging Bondsman.
 {¶ 15} The first and second assignments of error of Ohio Casualty are interrelated and will be considered together. Under the first assignment of error, Ohio Casualty argues the trial court abused its discretion in vacating the April 28, 1999 entry, settling the guardian's first partial account, and the November 9, 1999 entry, settling the guardian's second and final distributive account. Specifically, Ohio Casualty contends that there was no probative evidence presented before the magistrate showing that Erwin defrauded the probate court by the presentation of falsified bank or brokerage statements. Ohio Casualty further maintains that the magistrate's decision makes no finding of fraud on the part of Erwin, but, instead, merely finds that she neglected her duties. Under the second assignment of error, Ohio Casualty argues that the trial court's June 18, 2002 judgment entry is insufficient to justify vacating the prior judgments because it fails to identify the fraudulent conduct, and the court failed to find justifiable reliance and a detriment as a result of such reliance.
 {¶ 16} R.C. 2109.35 sets forth the circumstances under which the probate court may vacate an order settling a fiduciary's account. R.C. 2109.35 states in part:
The order of the probate court upon the settlement of a fiduciary's account shall have the effect of a judgment and may be vacated only as follows:
(A) The order may be vacated for fraud, upon motion of any person affected by the order or upon the court's own order, if the motion is filed or order is made within one year after discovery of the existence of the fraud. * * *
 {¶ 17} In the successor guardian's motion for relief from judgment, the successor guardian sought relief from the judgments approving the accounts based upon Civ.R. 60(B)(5), which provides in part: "On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order or proceeding for the following reasons: * * * (5) any other reason justifying relief from the judgment." "Fraud upon the court" is a recognized reason for granting relief under Civ.R. 60(B)(5). Firstar Bank Milwaukee v. Whitmore, Cuyahoga App. No. 81349, 2003-Ohio-1506. A motion for relief from judgment based upon fraud upon the court under Civ.R. 60(B)(5) is not subject to the one-year limitation required for motions under Civ.R. 60(B)(1), (2) and (3). Lanzara v. Lanzara (Mar. 30, 2000), Cuyahoga App. No. 75751.
 {¶ 18} Initially, we note that, while Ohio Casualty contends there was insufficient evidence presented at the hearing before the magistrate to show that Erwin committed fraud, the only party to object to the magistrate's decision was Erwin, who failed to file a transcript of those proceedings with the trial court. When objections are filed to a magistrate's decision, the objecting party "must supply the trial court with a transcript of the hearing or an affidavit as to the evidence presented at the magistrate's hearing." J.A. Berk Assoc. v. Levin, Lorain App. No. 01CA007943, 2002-Ohio-3182. Otherwise, appellate review of the trial court's findings is limited to whether the court abused its discretion in adopting the magistrate's report. State ex rel. Duncan v. Chippewa Twp. Trustees (1995), 73 Ohio St.3d 728, 730.
 {¶ 19} In her objections to the magistrate's decision, Erwin asserted in part that she had no way of knowing of her husband's actions with regard to the accounts. At the hearing before the trial court on objections to the magistrate's decision, which Erwin did not attend, counsel for the guardian argued that Erwin signed documents reflecting the accuracy of information despite the fact that funds had been depleted. Counsel further noted that bank statements for a National City Bank account, showing transfers from that account to a bank account not part of the guardianship, were sent to Erwin at her home, and thus she should have been aware that assets were wrongfully converted.
 {¶ 20} As noted, no transcript of the hearings before the magistrate was ever filed with the trial court, nor has Ohio Casualty, on appeal, provided this court with a narrative statement of the proceedings, pursuant to App.R. 9(C), or an agreed statement, as provided under App.R. 9(D). If an appellant wishes to argue on appeal that a finding is unsupported by the evidence, "it is necessary for him to provide the court with either a complete or partial verbatim transcript of the testimony, as required by Appellate Rule 9(B), or a narrative statement, as provided for in Appellate Rule 9(C), or an agreed statement as provided for in Appellate Rule 9(D)." Conway v. Ford Motor Co. (1976), 48 Ohio App.2d 233, 237. In the absence of a transcript, or any other form of the record as permitted by App.R. 9, we are unable to meaningfully review Ohio Casualty's claim that there was insufficient evidence for the trial court to vacate the order settling the fiduciary's account based upon a finding of fraud.
 {¶ 21} Further, while Ohio Casualty asserts there is a lack of evidence that Erwin's actions constituted actual fraud, we construe the trial court's decision as finding that Erwin's breach of her fiduciary duties in handling her mother's accounts resulted in what amounted to a constructive fraud upon the court and the ward. In contrast to actual fraud, constructive fraud "generally involves a mistake of fact," and "requires neither actual dishonesty nor intent to deceive, being a breach of legal or equitable duty which, irrespective of the moral guilty of the wrongdoer, the law declares fraudulent because of its tendency to deceive others, to injure public interests, or to violate public or private confidence." DiPippo v. Meyer (1970), 24 Ohio App.2d 86, 89. Constructive fraud "is presumed from the relation of the parties to a transaction or from the circumstances under which it takes place." Id.
 {¶ 22} In the present case, Erwin signed a "fiduciary's acceptance," accepting "the fiduciary duties which are required of me by law, and such additional duties as are ordered by the Court having jurisdiction," including the duty to expend funds only as authorized by the court. The relationship between a guardian and a ward is fiduciary in nature, and in discharging the duties of a guardian, the law requires fiduciaries "to act in good faith and primarily for the benefit of the ward in matters connected with his well-being." In re Briggs (July 9, 1997), Summit App. No. 18117. R.C. 2111.14(A) requires a guardian to "make and file within three months after his appointment a full inventory of the real and personal property of the ward [and] its value[.]" Pursuant to R.C. 2111.14(B), a guardian is to "manage the estate for the best interest of the ward."
 {¶ 23} There is no dispute, as found by the trial court, that the documents Erwin signed and submitted to the court in her capacity as guardian contained false information regarding the assets at issue. It is equally clear that the court acted in reliance upon such misinformation in approving the accounts, and would not have done so had it been aware of the true nature of the assets. Under R.C. 2109.35(A), a probate court may vacate an order settling a fiduciary's account "upon the court's own order." Given the limited record in this case, we presume the regularity of the magistrate's finding that Erwin's actions constituted a breach of her fiduciary duties, and we further find no error in the trial court's determination that Erwin's failure to perform her legal duties, regardless of her intent, promoted a fraud upon the court and the ward for which the trial court had the authority, pursuant to R.C. 2109.35(A), to vacate the order settling the fiduciary's account.
 {¶ 24} Based upon the foregoing, the first and second assignments of error of Ohio Casualty are not well-taken and are overruled.
 {¶ 25} Under the third assignment of error, Ohio Casualty argues it was denied due process of law when the trial court adjudicated the successor guardian's exceptions to the accounts prior to the court issuing an order setting aside and vacating the court's entries settling the guardian's first partial account and the guardian's second and final distributive account. We disagree.
 {¶ 26} Ohio Casualty argues on appeal, as it did before the trial court, that the magistrate's February 19, 2002 decision was deficient because it did not contain language specifically vacating the two prior orders of the court settling the accounts. The trial court rejected this contention, holding that, "[i]mplicit in the sustaining of the Exceptions to those prior accounts of Davis Guzay Erwin is the vacation of both of those Orders on the basis that this Court was defrauded by the promulgation of falsified documents to justify the Guardian's Accounts and the assets remaining in the fiduciary's hands." We find no error with the trial court's determination on this issue. Further, as noted by appellee, although Ohio Casualty contends it was denied due process, Ohio Casualty's application for continuance of hearing, filed April 23, 2001, reflects that it was aware that the hearing before the magistrate, scheduled for June 1, 2001, was on both the "Motion for Relief from Judgment and Exceptions to Accounts."
 {¶ 27} Finally, we note that R.C. 2109.61 provides a "broad remedy" to anyone injured by reason of a breach of a condition of the bond of the fiduciary. In re Grant (1978), 56 Ohio App.2d 207, 215. Specifically, R.C. 2109.61 states:
An action may be prosecuted on the bond of a fiduciary against any one or more of the obligors thereof by any person who has been injured by reason of the breach of any condition of the bond. Such action shall be prosecuted for the benefit of all persons who are interested in the estate and who have been similarly injured. Any such person or any obligor on the bond who is not already a party to the action may intervene therein or be made a party thereto by supplemental, amended, or crosspetition.
If a surety on the bond of a fiduciary is not made a party to an action or proceeding against such fiduciary, the fact that a judgment was rendered or an order was entered against the fiduciary shall constitute only prima-facie evidence of the justice and validity of the claim in an action subsequently brought against the sureties on the bond of the fiduciary.
 {¶ 28} Thus, Ohio Casualty, if it so chooses, has a statutory right to a hearing on the bond. However, Ohio Casualty's contention that it was denied due process in the instant case is unpersuasive.
 {¶ 29} Ohio Casualty's third assignment of error is without merit and is overruled.
 {¶ 30} Based upon the foregoing, Ohio Casualty's three assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas, Probate Division, is hereby affirmed.
Judgment affirmed.
PETREE, P.J., and McCORMAC, J., concur.
McCORMAC, J., retired of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.